Case Nos. 23-3225/23-3216

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

COMMONWEALTH OF KENTUCKY (23-3216);
KENTUCKY ENERGY AND ENVIRONMENT CABINET (23-3225)

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
MICHAEL S. REGAN, Administrator, United States Environmental Protection
Agency

*Respondents*

---

Petition for Review of Final Rule of the
United States Environmental Protection Agency

---

# KENTUCKY ENERGY AND ENVIRONMENT CABINET'S
# REPLY TO RESPONDENTS' CONSOLIDATED RESPONSE BRIEF

---

Joseph A. Newberg, II
*General Counsel*
Jarrod L. Bentley
*Staff Attorney III*
Kentucky Energy and Environment Cabinet
300 Sower Boulevard, Third Floor
Frankfort, Kentucky 40601
(502) 782-0568
joea.newberg@ky.gov
jarrod.bentley@ky.gov

Dated:    January 8, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ........................................................................................ 1

ARGUMENT ................................................................................................ 2

    I.    Respondents' Argument That Kentucky is Linked to Downwind Monitors Above 1 ppb is Disingenuous. ........................................................................... 3

        A.    Kentucky was required to consider only nonattainment and maintenance-only receptors under the four-step analytical framework of the GNP as of the SIP submission deadline. ............................................................................. 4

        B.    EPA created "violating-monitors" in response to the 2016v2 modeling comments and introduced it to the states via the Final Rule. .................... 6

    II.    Kentucky Provided Ample Technical Justification for an Approvable SIP Using the 1 ppb Alternative Contribution Threshold. .................................................. 9

    III.  EPA's *Post-hoc* Determinations to Rely on Modeling Platforms Generated After the SIP Submission Deadline and the Reversal of Agency Guidance is not Within the Agency's Technical Expertise and Should Not be Afforded Deference ............. 14

    IV.  The Proper Remedy Includes Vacatur of the Final Rule. .................... 17

    V.    EPA's Attempt to Relitigate Venue is Untimely .................................... 19

CONCLUSION .......................................................................................... 21

CERTIFICATE OF SERVICE ................................................................. 22

CERTIFICATE OF COMPLIANCE ....................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Alaska Dep't Env't Conservation v. EPA,*
540 U.S. 461 (2004) .................................................................... 12

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
998 F.2d 146 (D.C. Cir. 1993) ..................................................... 17

*Am. Great Lakes Ports Ass'n v. Schultz,*
962 F.3d 510 (D.C. Cir. 2020) ..................................................... 18

*Arent v. Shalala,*
70 F.3d 610 (D.C. Cir. 1995) ....................................................... 15

*Arkansas v. EPA,*
No. 23-1320 (8th Cir. Feb. 16, 2023) ........................................... 19

*Bowles v. Russell,*
432 F.3d 668 (6th Cir. 2005) ....................................................... 20

*Bowman Transp., Inc. v. Ark.-Best Freight Sys. Inc.,*
419 U.S. 281(1974) ...................................................................... 13

*Chevron v. Natural Res. Def. Council, Inc.,*
467 U.S. 837 (1984) .................................................................... 15

*Christopher v. SmithKline Beecham Corp.,*
567 U.S. 142 (2012) .................................................................... 15

*City of Arlington v. FCC,*
569 U.S. 290 (2013) .................................................................... 16

*Darrah v. City of Oak Park,*
255 F.3d 301 (6th Cir. 2001) ....................................................... 20

*Dept. of Homeland Security v. Regents of the Univ. Of Cal.,*
140 S. Ct. 1891 (2020) ................................................................ 15

*EME Homer City Generation, L.P. v. EPA,*
795 F.3d 118 (D.C. Cir. 2015) ..................................................... 18

*Env't Integrity Project v. EPA,*
425 F.3d 992 (D.C. Cir. 2005) ..................................................... 16

*EPA v. EME Homer City Generation L.P.,*
572 U.S. 489 (2014) ................................................................. 2, 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ................................................................ 12, 13

*Nat'l Lifeline Ass'n v. FCC,*
921 F.3d 1102 (D.C. Cir. 2019) ................................................... 15

*New York v. EPA,*
964 F.3d 1214 (D.C. Cir. 2020) .....................................................8

*Ohio Public Interest Research Group, Inc. v. Whitman,*
    386 F.3d 792 (6th Cir. 2004) ............................................................. 15
*Plumhoff v. Rickard,*
    134 S. Ct. 2012, (2014) .................................................................... 20
*Sierra Club v. EPA,*
    60 F.4th 1008 (6th Cir. 2023) ........................................................... 17
*Sierra Club v. EPA,*
    356 F.3d 296 (D.C. Cir. 2004) ...................................................7, 10, 16
*Smiley v. Citibank,*
    517 U.S. 735 (1996) ........................................................................ 8, 9
*Texas v. EPA,*
    No. 23-60069, slip op. (5th Cir. May 1, 2023) ............................. 7, 15, 16, 19
*Train v. Nat. Res. Def. Council, Inc.,*
    421 U.S. 60 (1975) ........................................................................ 12
*United Steel v. Mine Safety & Health Admin.,*
    925 F.3d 1279 (D.C. Cir. 2019) ......................................................... 18
*Wages and White Lion Investments, L.L.C. v. United States Food and Drug Administration,*
    16 F.4th 1130 (5th Cir. 2021) ........................................................... 3, 8
*Wallace v. FedEx Corp.,*
    764 F.3d 571 (6th Cir. 2014) ............................................................ 20

**Statutes:**

5 U.S.C. § 706(2) ............................................................................ 18
42 U.S.C. § 7410(a)(2) ...................................................................... 15
42 U.S.C. § 7410(a)(2)(D)(i)(I) ............................................................. 4

**Rules:**

6 Cir. R. 27(g) .............................................................................. 19
6 Cir. R. 35 ................................................................................. 20
6 Cir. R. 40 ................................................................................. 20
Fed. R. App. P. 40 ....................................................................... 19, 20

**Regulations:**

40 C.F.R. 51.102 ............................................................................ 10

## INTRODUCTION

Respondents improperly attempt to once again argue that venue is appropriate in the D.C. Circuit – venue is appropriate here. Respondents further argue that under either the 2011 or 2016 modeling iterations, Kentucky is linked to downwind monitors above our "preferred" screening threshold of 1 ppb. This argument is disingenuous. The Kentucky Energy and Environment Cabinet ("Cabinet") submitted a SIP to EPA that met the applicable requirements of the Clean Air Act ("Act"), including the requirements of the Good Neighbor Provision ("GNP"). The Cabinet adequately addressed the Pre-Draft SIP Comments from EPA, justified the use of the 1 ppb alternative contribution threshold, and provided adequate technical analyses of the GNP framework to satisfy the Act's requirements.

The downwind receptors referenced by Respondents as being linked to Kentucky above 1 ppb are not recognized under the Act, or previous Good Neighbor SIP rulings, as receptors that states are required to address in their SIP submissions. The Court should disregard any argument from EPA regarding these "violating-monitors" as justification to uphold the disapproval of Kentucky's SIP. Simply put, Kentucky sources do not significantly contribute to nonattainment or interfere with maintenance of the NAAQS at any downwind monitors for the revised 2015 8-hour ozone NAAQS.

Respondents are in no position to opine on what reliance interest Kentucky placed on their guidance memoranda or comments to Kentucky's draft SIP submission.

Moreover, EPA is not entitled to deference for the abrupt policy reversals in violation of the fair-notice doctrine of the Administrative Procedure Act ("APA"). The Cabinet provided more than adequate technical analyses in the SIP submission to justify the use of the 1 ppb alternative threshold. Per EPA's 2016v3 modeling, Kentucky is not linked to any downwind nonattainment or maintenance receptors above 1 ppb.

The Court should vacate EPA's disapproval of Kentucky's SIP, with instructions to EPA to allow the Cabinet sufficient time to review the 2016v3 modeling data, apply the 1 ppb alternative contribution threshold to the four-step GNP framework for non-attainment and maintenance-only monitors to find that no further reductions are needed, and approve the revised SIP in its entirety.

## ARGUMENT

Respondents expend a significant portion of their Response Brief analyzing the failures of previous Good Neighbor SIP rulings. Respondents claim that even under the more prescriptive GNP, many states still failed to submit or adopt plans containing adequate provisions addressing their Good Neighbor obligations, leading to successive rounds of rulemaking and judicial decisions (Resp. Brief, at 22). Citing the decision in *EPA v. EME Homer City Generation L.P.*, 572 U.S. 489, 510 (2014), EPA provides a glimpse of the foundation for these catastrophic outcomes. "Unless the Clean Air Act specifies, EPA need not provide guidance or specifically define the Act's applicable requirements for states . . . Nor is EPA required to provide states with opportunities to

correct a deficient SIP before issuing a FIP." (Resp. Brief at 21) (citing *EME Homer*, 572 U.S. at 510, and 509).

EPA has pushed this holding to the outer limits of what Congress envisioned for the cooperative federalism framework of the Act. When the Cabinet began preparing a SIP for the revised 2015 8-hour ozone NAAQS, EPA was more than willing to provide guidance memoranda and feedback on the Pre-Draft SIP submission. Thereafter, once the statutory timeframe for EPA to act on Kentucky's SIP submission had passed, the Agency's willingness to work with States expired. EPA reversed its prior guidance to States like Kentucky, and completely disregarded the previous direction given to States during the SIP preparation process. "[A]n agency cannot issue guidance on the meaning of a statute, encourage its regulated entities to rely on the guidance, and then blame the *statute* for pulling the rug out from under the entities." *Wages and White Lion Investments, L.L.C. v. United States Food and Drug Administration*, 16 F.4th 1130, 1140 (5th Cir. 2021) (emphasis in original). Adding insult to injury, EPA now alleges that boilerplate regulatory disclaimers justify its capriciousness. EPA now finds itself mired in litigation across the United States – a calamitous outcome of its own creation.

I.     **Respondents' Argument That Kentucky is Linked to Downwind Monitors Above 1 ppb is Disingenuous.**

Respondents allege throughout their Response Brief that Kentucky is linked to downwind monitors above our preferred significant contribution threshold of 1 ppb (Resp. Brief at 33, Table 1). These allegations are based upon a new category of

maintenance-only receptors that EPA created for the Final Rule at issue. The creation of these "violating-monitors" represents a clear violation of the fair notice doctrine of the APA. To now argue the disapproval of Kentucky's SIP is justified based upon impacts to a violating-monitor is wholly unreasonable. This argument alone demonstrates clear arbitrary and capricious agency action by EPA and the Administrator.

### A. Kentucky was required to consider only nonattainment and maintenance-only receptors under the four-step analytical framework of the GNP as of the SIP submission deadline.

A SIP must contain "adequate provisions" to prevent upwind emissions that "will contribute significantly to nonattainment in, or interfere with maintenance by, any other state with respect to any [NAAQS]." 42 U.S.C. § 7410(a)(2)(D)(i)(I). The Act does not define when upwind states "contribute significantly" to downwind nonattainment or "interfere with maintenance" of the NAAQS in a downwind state. EPA has not promulgated regulations to define these terms and, instead, has developed the four-step analytical "framework" discussed in detail in the parties' briefs. J.A. ___, [Final Rule, at 9,338].

Under the four-step GNP framework, Step 1 falls upon EPA to identify the downwind nonattainment and maintenance-only monitors an upwind state is impacting. Per the Final Rule:

> In Step 1, the EPA identifies monitoring sites that are projected to have problems attaining and/or maintaining the NAAQS . . . Where the EPA's analysis shows that a site does not fall under the definition of a

> nonattainment or maintenance receptor, *that site is excluded from further analysis under the EPA's 4-step interstate transport framework.*

*Id.* at 9,341 (emphasis added). EPA's March 27, 2018 memorandum identified downwind nonattainment and maintenance-only receptors that Kentucky sources were impacting, including the level of contribution. J.A. ___, ["Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)," March 27, 2018, at 5-7, C-1 to C-2 (the "March 2018 Memo")].

The Cabinet relied on the modeling data included in the March 2018 Memo, at EPA's express recommendation, to identify the nonattainment and maintenance receptors that would need to be addressed in Kentucky's SIP. In EPA's comments to Kentucky's Pre-draft SIP submission ("Pre-Draft Comments"), EPA recommended that the Cabinet utilize the modeling provided in the March 2018 Memo, rather than including additional modeling provided by a third party. J.A. ___, [KY SIP Submission at 325-26]. This comment also recommended the use of the 1 ppb alternative contribution threshold identified in EPA's memorandum entitled "Analysis of Contribution Thresholds for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards," Peter Tsirigotis, August 31, 2018 ("the August 2018 Memo"). The "key comment" unambiguously stated:

> An alternative, more straightforward approach would be to rely entirely upon the EPA's projected design values and contribution data and apply

> the 1 ppb screening threshold established in the EPA's August 31, 2018
> Memorandum to the contributions from Kentucky to downwind
> receptors . . . EPA's modeling projects that the Harford site will be a
> maintenance-only receptor with a 2023 average design value of 70.9 ppb .
> . . EPA's modeling also shows that this site is the only receptor to which
> Kentucky contributes above 1 ppb. Thus, under this approach Kentucky
> would only be linked to the maintenance receptor in Harford County,
> Maryland.[1]

*Id.* Per EPA's instruction, the Cabinet was only required to address the impact to the

Harford County, Maryland maintenance-only receptor in Kentucky's SIP submission.

At the time the Cabinet submitted the SIP to EPA for approval, EPA had not

identified or created any violating-monitor category of maintenance-only receptors

through notice-and-comment rulemaking or otherwise. Nevertheless, Respondents

now argue that their disapproval is not only justified, but required, due to the impact

Kentucky sources have on one violating-monitor in Cleveland, Ohio (Resp. Brief, at

17-18, 33, and 38).

### B. EPA created "violating-monitors" in response to the 2016v2 modeling comments and introduced it to the states via the Final Rule.

EPA explains in the Final Rule that a new maintenance-only receptor category

was developed in response to comments received regarding the 2016v2 emissions

modeling. J.A. ___, [Final Rule, at 9,349]. These "violating-monitors" were established

for the Final Rule following EPA's proposed disapproval of Kentucky's SIP, and the

---

[1] The 2011 based modeling platform identified Kentucky's contribution level as 1.52
ppb, with an average design value for 2023 identified as 70.9 ppb, which would be
considered attainment for the revised 2015 ozone standard.

Cabinet was not afforded any opportunity to review, comment on, or address this new category of maintenance-only receptors until the Final Rule was published.

As the Final Rule relates to Step 1 of the four-step GNP framework, EPA explained that "because we did not propose to apply this expansion of the basis for regulation under the good neighbor provision receptor-identification methodology as the sole basis for finding an upwind state linked . . . *we are only using this receptor category on a confirmatory basis*." J.A. ___, [Final Rule, at 9,349] (emphasis added). EPA further stated that if a state is only linked to a violating-monitor receptor in the final analysis, it would defer taking final action on that state's SIP submittal. *Id.* Despite the assurance given by EPA in the Final Rule to defer any final action based on a linkage to a violating-monitor, Respondents are now arguing that Kentucky's linkage to one violating-monitor above 1 ppb prohibits the approval of Kentucky's SIP (Resp. Brief, at 17-18, 33, and 38).

An argument that is so contrary to the plain language of the Final Rule cannot be considered. As presented in the Cabinet's Brief, EPA cannot "summarily reject [plans] based on the States' failure to consider information that only became available after the [] submission deadline." Cabinet's Brief, at 30, (citing *Texas v. EPA*, No. 23-60069, slip op. at 21-22 (5th Cir. May 1, 2023) ("*Texas 2023*"), and *Sierra Club v. EPA*, 356 F.3d 296, 308 (D.C. Cir. 2004) ("To require states to revise completed plans every time a new model is announced would lead to significant cost and potentially endless delays in the approval processes."). EPA's inclusion of the violating-monitor receptors

as a basis to disapprove Kentucky's SIP is as unreasonable as EPA's decision to base the final SIP disapproval on the 2016v3 modeling platform. "The reasoned agency decision-making that the [Act] demands does not allow the EPA to keep moving the finish line." *New York v. EPA*, 964 F.3d 1214, 1223 (D.C. Cir. 2020) (citation omitted) (*see also: Wages and White Lion Investments, L.L.C., supra*, at 1141 ("The very fact that the FDA perceived the need to rehabilitate its Order with new and different arguments before our court underscores that the Order itself omitted a reasoned justification for the agency's action. This further confirms that the Order is likely arbitrary, capricious, or otherwise unlawful."))

The Court should disregard any argument from Respondents regarding the impact Kentucky sources have on the newly created violating-monitor receptors. "That practically post hoc, '[s]udden and unexplained change' in the basic rules of the game is a classic case of arbitrary and capricious agency action." *Smiley v. Citibank*, 517 U.S. 735, 742 (1996) (citation omitted). It is fundamentally unfair for EPA to initially advise that these monitors were being considered in the Final Rule on a confirmatory basis, only to now argue that Kentucky's SIP must be disapproved due to an impact to one violating-monitor above 1 ppb based on modeling generated after the plan was submitted.

II.    **Kentucky Provided Ample Technical Justification for an Approvable SIP Using the 1 ppb Alternative Contribution Threshold.**

The Cabinet provided ample information to support the use of the 1 ppb alternative contribution threshold and adequately addressed EPA's Pre-Draft Comments via reasoned technical analyses. To be clear, the Cabinet followed EPA's recommendation to utilize the 1 ppb alternative contribution threshold in the first place. "The EPA recommends Kentucky consider referring to [the August 2018 Memo] as part of its rationale for comparing its contribution to a 1 ppb threshold." J.A. ____, [KY SIP Submission at 327-28]. The Cabinet did exactly as EPA recommended, but to no avail. The bottom-line is that EPA made submitting an approvable SIP using the 1 ppb contribution threshold an impossibility for this rulemaking.

Respondents point to one paragraph of Kentucky's SIP submission as the full analysis provided by the Cabinet to support the use of the 1 ppb alternative contribution threshold. This is factually inaccurate. Beginning on page 30 of the submission, the Cabinet provided a full narrative of the NOx emissions reductions that have occurred in the Commonwealth since 2008, including graphical data and a narrative explanation of the technical analysis. J.A. ___, [KY SIP Submission at 30-46]. The Cabinet also provided an ample technical evaluation of the downwind receptors linked to the Commonwealth in the 2011 based modeling provided in the March 2018 Memo. *Id.* The Cabinet included additional technical data in support in the appendices to the SIP submittal. J.A. ___, [KY SIP Submission at 69-228].

The Cabinet responded to all of EPA's Pre-Draft Comments, addressing each concern raised by the Agency in detail. *Id.* at 322-41. Specifically, key comment (1)(c) requested further analysis for the Harford County, Maryland maintenance-only monitor (the "Edgewood Monitor"). *Id.* at 324-25. Contrary to Respondents' arguments (Resp. Brief, at 35-36), the Cabinet did provide a narrative explanation of how our projected interference with maintenance of the NAAQS would be addressed via SIP requirements. J.A. ___, [KY SIP Submission at 324-25]. Respondents further allege that the Cabinet simply cited the August 31, 2018 Memorandum with no further analysis or explanation to justify the use of the 1 ppb alternative contribution threshold (Resp. Brief, at 35). This assertion is inaccurate.

EPA's key comments (2) and (5) unambiguously directed the Cabinet to rely on EPA's 2011 based modeling and the 1 ppb contribution threshold to address the Edgewood Monitor. J.A. ___, [KY SIP Submission at 325-26, 327-28]. In response, the Cabinet explained that the public notice-and-comment period required by 40 C.F.R. 51.102 began on August 23, 2018, and the August Memorandum recommending the use of the 1 ppb contribution threshold was not published until eight days later. *Id.* The Cabinet stated in-part that "[a]fter review of the memo, the Cabinet concurs with EPA's assessment of the 1 ppb threshold[.]" *Id.*

The Cabinet then addressed the remainder of EPA's key comment (5) by conducting an over-control analysis of the Edgewood Monitor. *Id.* at 45-50. The Cabinet provided a lengthy discussion of Maryland monitors along the I-95 corridor,

identifying exceedances of the 2015 ozone design values, and the impact of local mobile sources in combination with atmospheric conditions being the key driver of nonattainment in the area – not upwind emissions originating in the Commonwealth. *Id.*

Additionally, the Cabinet referenced a presentation from the Director of Air for the Maryland Department of the Environment titled "A Path Forward for Reducing Ozone in Maryland and the Mid-Atlantic States, Driving with Science," which highlighted programs to reduce emissions from local sources in Maryland and the Northeast. The programs included: New rules by New York on small generators; New Ozone Transport Commission initiatives involving idle reduction; Aftermarket catalysts on mobile sources; Electric and other zero emission vehicles; Maryland rules on municipal waste combustors; and Maryland's Idle Free Initiative. *Id.* at 49-50.

Referencing comments from Midwest Ozone Group ("MOG") and Alpine Geophysics ("Alpine"), the Cabinet concluded the over-control analysis of the Edgewood Monitor stating:

> MOG noted that the current EPA modeling does not account for all current local control programs and unit shutdowns, which can cause the model to over-predict ozone concentrations. With the inclusion of the programs and shutdowns, Alpine states, '. . . it is highly likely that the inclusion of these emissions reductions will result in all areas demonstrating attainment of the 2015 NAAQS without the need for further additional regional or national emissions reductions programs.'

*Id.* Ultimately, any consideration of the 1 ppb contribution threshold for the Edgewood Monitor became irrelevant when EPA proposed "to primarily rely on modeling based

on the updated and newly available 2016v2 emissions platform in evaluating [Kentucky's submission] with respect to Steps 1 and 2 of the four-step interstate transport framework." J.A. ___, [87 Fed. Reg. 9,498, 9,501 ("Proposed Disapproval")]. However, it should be noted that Kentucky rightly determined that no emissions reductions from sources within the Commonwealth would be required in order for the Edgewood Monitor to reach attainment of the revised ozone standard by 2023.

Per EPA's recommendations, the Cabinet was not required to provide a step 3 or step 4 analysis under the GNP four-step framework for any other linked downwind monitor. EPA did not raise an issue with the absence of a step 3 or step 4 analysis until the Proposed Disapproval was published. The Proposed Disapproval utilized the 2016v2 modeling platform, identifying new downwind linked monitors. Thereafter, any step 3 or step 4 analysis that could have been conducted for a linked monitor in response to the Proposed Disapproval would have been futile, because the Final Rule utilized the newer 2016v3 modeling platform.

Clearly, EPA failed to consider the reasoned judgment of the Cabinet in crafting Kentucky's SIP. The Act does not permit EPA to disapprove a state's plan because it disagrees with the state's reasonable discretionary choices. *See: Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975); *Alaska Dep't Env't Conservation v. EPA*, 540 U.S. 461, 487, 490 (2004). To the contrary, an agency action is arbitrary and capricious if:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence

before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). While the standard is deferential, the Court must still assess "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys. Inc.*, 419 U.S. 281, 285 (1974)).

Kentucky provided adequate justification of the use of the 1 ppb contribution threshold via the over-control analysis of the Edgewood Monitor. EPA completely disregarded the Cabinet's reasoned decision making and reliance on EPA's recommendations, opting instead for an authoritarian "application of a uniform framework of policy judgments to ensure an 'efficient and equitable' approach" for federal interstate ozone transport policy. J.A. ___, [Final Rule, at 9,340]. This approach is not "efficient and equitable" for Kentucky, as the Commonwealth is uniquely impacted by Respondents' decision to reverse Agency guidance on the use of the 1 ppb contribution threshold in the Final Rule.

EPA acknowledged in the Final Rule that:

[T]his issue is primarily limited to the difference between a 0.70 ppb threshold and a 1.0 ppb threshold. Therefore, we note that this issue is only relevant to a small number of states whose only contributions to any receptor are above 1 percent of the NAAQS but lower than 1 ppb. Under the 2016v3 modeling of 2023 being used in this final action, those states with contributions that fall between 0.70 ppb and 1 ppb included in this action are Alabama, Kentucky, and Minnesota.

13

J.A. ___, [Final Rule, at 9,373]. Kentucky's SIP should have been approved by EPA, as it met all of the applicable requirements of the Act, the GNP framework, and addressed EPA's Pre-Draft Comments justifying the use of the 1 ppb alternative contribution threshold.

III.    **EPA's *Post-hoc* Determinations to Rely on Modeling Platforms Generated After the SIP Submission Deadline and the Reversal of Agency Guidance is not Within the Agency's Technical Expertise and Should Not be Afforded Deference.**

EPA's omnibus final disapproval of 21 state submissions through the application of a "nationally consistent analytical framework to evaluate all 21 submissions in a single action" clearly suggests that EPA did not consider Kentucky's submission "on the merits." J.A. ___, [Final Rule, at 9,380]; and (Resp. Brief, at 48). Respondents confirm as much in their Brief (Resp. Brief, at 37). Quoting the Final Rule, Respondents offer the following justification for the final action taken by the Agency:

> [T]o ensure equity among states and considering the collective contribution problem caused by interstate ozone transport, EPA assessed all submissions with an eye toward national consistency in determining whether states adequately justified that they should have no Good Neighbor obligations and whether states did their fair share to address the collective contribution problem.

*Id.* (*See also*: J.A. ___, [Final Rule, at 9,354 and 9,381]). Congress did not delegate authority to EPA to require the States to justify their submissions under what EPA considers a "fair share" of the collective contribution problem.

For the purposes of a SIP, the GNP instead delegates authority to the States in the first instance to determine what reductions are best suited for emissions activities

and sources within the State. *See*: 42 U.S.C. § 7410(a)(2) ("Each implementation plan *submitted by a State . . . shall . . .*") (emphasis added). "An agency's interpretation of its governing statute that contravenes Congress's unambiguously expressed intent is not entitled to judicial deference." *Ohio Public Interest Research Group, Inc. v. Whitman*, 386 F.3d 792, 795 (6th Cir. 2004) (citing *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "When we are addressing the reasonableness of an agency's actions pursuant to its governing statute, the arbitrary and capricious standard of the APA governs our review." *Id.* (citing *Arent v. Shalala*, 70 F.3d 610, 616 (D.C. Cir. 1995).

As explained in the Cabinet's Brief (at 31-32), if an agency rejects a policy that regulated parties have relied on, that "unfair surprise" is arbitrary and capricious. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012). Thus, when EPA issues "guidance and modeling data – like it did in [March and August] 2018 – it must take due account of State's 'serious reliance interests' before 'chang[ing] course.'" *Texas 2023*, at 21 (quoting *Dept. of Homeland Security v. Regents of the Univ. Of Cal.*, 140 S. Ct. 1891, 1913 (2020)). This issue is further heightened when EPA's Pre-draft Comments are taken into consideration. EPA "cannot ignore its prior factual findings that contradict its new policy nor ignore reliance interests." *Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1111 (D.C. Cir. 2019) (citation omitted).

Both the updated modeling iterations and the unexplained reversal of the 1 ppb alternative contribution threshold summarily invalidated the Cabinet's analysis of the four-step framework of the GNP. Moreover, EPA recommended that the Cabinet

reference both the March and August 2018 Memoranda in Kentucky's SIP submission. Contrary to Respondents' assertions regarding waiver, Kentucky responded to EPA's Pre-draft Comments prior to submitting the final version of the SIP. These responses were echoed once again in Kentucky's comments to both the Proposed Disapproval and the proposed FIP. J.A. ___, ____, [Kentucky EEC Comments on Proposed Rule, and Kentucky Comments on Proposed FIP, respectively]. The significant, *post-hoc* changes to EPA's express recommendations negated Kentucky's reasonable reliance interests and effected a "surprise switcheroo" that imposed a standard that was impossible for Kentucky to meet. *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005).

As explained by the Fifth Circuit, EPA asks the Court for an interpretation of the Act that could allow it to "easily flout the [Act's] deadlines with impunity, then leverage that disregard to summarily reject [plans] based on the States' failure to consider information that only became available after the [] submission deadline." *Texas 2023*, at 21-22; *see also: Sierra Club v. EPA*, 356 F.3d 296, 308 (D.C. Cir. 2004) ("To require states to revise completed plans every time a new model is announced would lead to significant cost and potentially endless delays in the approval processes.").

"[F]or Chevron deference to apply, the agency must have received congressional authority to determine the particular matter at issue in the particular manner adopted." *City of Arlington v. FCC*, 569 U.S. 290, 306 (2013). Here, EPA usurped the authority Congress intended for Kentucky by summarily rejecting our SIP in favor of a uniform

16

national approach to satisfy GNP requirements. The Court must vacate the Final Rule disapproving Kentucky's SIP, as it represents an arbitrary and capricious agency action that is in excess of EPA's statutory authority and contrary to law.

## IV.    The Proper Remedy Includes Vacatur of the Final Rule.

Respondents suggest that remand without vacatur is the appropriate remedy if the Court finds error in the disapproval of Kentucky's SIP (Resp. Brief, at 45, 110-13). This result would only allow EPA additional time to construct supplemental *post-hoc* justifications to issue a FIP to Kentucky. As fully explained above and in the Cabinet's Brief, sources sited within the Commonwealth do not contribute to nonattainment or interfere with maintenance of the revised ozone standard at any downwind receptor. The Cabinet has shown that EPA's creation of the violating-monitor is arbitrary and capricious and is in excess of what the Act requires Kentucky to consider in formulating its SIP. Any allegation from Respondents that Kentucky emissions are contributing to adverse health effects in a downwind state is speculative – at best.

Whether vacatur is appropriate depends on "the seriousness of the agency error" and "the disruptive consequences of vacatur." *Sierra Club v. EPA*, 60 F.4th 1008, 1022 (6th Cir. 2023) (citing *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 998 F.2d 146, 150-51 (D.C. Cir. 1993)). EPA has clearly exceeded its statutory authority in the disapproval of Kentucky's SIP based on the reasoning of the Proposed Disapproval and the Final Rule. The Cabinet has pointed to clear reliance interests placed on the March and

August 2018 memoranda, and the Pre-Draft Comments from EPA. The seriousness of the "agency error" in this instance should be considered high by the Court.

The APA permits courts to "hold unlawful and set aside" an action. 5 U.S.C. § 706(2). "The ordinary practice is to vacate unlawful agency action." *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019). By contrast, remand without vacatur is an "exceptional remedy" that the D.C. Circuit reserves for "rare cases," *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020). Among other reasons, remand without vacatur "creates a risk that an agency may drag its feet and keep in place an unlawful agency rule." *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015).

Respondents allege that procedural defects and record-based deficiencies could be addressed and corrected by EPA on remand (Resp. Brief, at 111). On its face, EPA's argument is improper as it foreshadows the Agency's plan to ignore the Cabinet's well-reasoned GNP analysis in favor of its own determinations regarding what reductions and controls to impose on emission sources within the Commonwealth. Respondents' allegation that vacatur would disrupt and impede polluting sources' compliance with the Act wholly lacks merit. This Court, and others, have properly stayed enforcement of the Good Neighbor FIP promulgated by EPA. The 2023 ozone season has already passed, and that error falls squarely on EPA's delay in acting on multiple SIP submissions throughout the Nation. Vacatur will not lead to any disruptive consequences beyond those already created by EPA in this rulemaking. The Court

should follow the default rule of the APA, to vacate or set aside the disapproval of Kentucky's SIP.

## V.    EPA's Attempt to Relitigate Venue is Untimely.

Respondents have argued their position at length regarding the proper venue to hear this Petition for Review. A motion panel for this Court issued an Order on Respondents' Motion to Dismiss or Transfer Venue on July 25, 2023, denying Respondents' Motion. See Opinion and Order, Case Nos. 23-3216/3225, RE 39-2 (6th Cir. Jul. 25, 2023). The Panel correctly held that:

> Because Kentucky's SIP denial was based on a determination of local scope or effect, EPA fails to rebut the 'default presumption of § 7607 (b)(1),' which 'requires' that this Circuit review locally or regionally applicable actions . . . Thus, we agree with other circuits to have considered this issue that transfer is not warranted.

*Id.* (Citing *Texas 2023*, at 2; *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023). Respondents have not petitioned this Court for a rehearing of that Opinion and Order and, as such, Respondents' attempt to relitigate that issue is untimely.

A party may file a Motion for Reconsideration pursuant to 6 Cir. R. 27(g) to seek a rehearing of a judgment of this court under Fed. R. App. P. 40. Pursuant to Fed. R. App. P. 40, a petition for panel rehearing may be filed 14 days after entry of judgment or, as a United States Agency, Respondents can petition for a rehearing 45 days after the entry of judgment. *See:* Fed. R. App. P. 40. The Opinion and Order was issued by the Panel in July 2023, well beyond the 45 days afforded to Respondents to file the Motion for Reconsideration.

"In the regular course of events, one panel of this court cannot overrule another panel's published decision." *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). "Later panels cannot simply choose to disregard motions-panel decisions, and if a litigant wishes to challenge a motions panel's decision on a dispositive motion, the proper course of action is to request panel rehearing or rehearing en banc." *Id.* (Citing 6 Cir. R. 35, 40; *see also*: *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2018, (2014) (noting [the Courts] use of the procedure); *Bowles v. Russell*, 432 F.3d 668, 671 (6th Cir. 2005) (same), aff'd, *Bowles v. Russell*, 551 U.S. 205 (2007)). This Court held in the *Wallace* decision that it would not overturn an earlier motions panel, based on clear error, as the decision did not result "in a manifest injustice." *Wallace, supra*, at 584.

Here, Respondents simply cannot show any clear error of the Opinion and Order of the Panel issued on July 25, 2023, that would result in a "manifest injustice." Respondents' reliance on the Wallace decision to state that the July 2023 Opinion and Order is not binding falls short of persuasive. Respondents should have filed a Motion for Reconsideration in accordance with the local and federal rules – they did not. Instead, Respondents have (at exorbitant length) attempted to improperly relitigate their Motion to Dismiss or Transfer in their Brief. The Court should dismiss this line of argument as a settled issue.

## CONCLUSION

The Court should vacate EPA's disapproval of Kentucky's SIP, with instructions to EPA to allow the Cabinet sufficient time to review the 2016v3 modeling data, apply the 1 ppb alternative contribution threshold to the four-step GNP framework for non-attainment and maintenance-only monitors to find that no further reductions are needed, and approve the revised SIP in its entirety.

Respectfully submitted,

/s/ Jarrod L. Bentley
/s/ Joseph A. Newberg, II
Kentucky Energy and Environment Cabinet
Office of Legal Services
300 Sower Boulevard, Third Floor
Frankfort, Kentucky 40601
(502) 564-2356

21

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

Dated: January 8, 2024

 /s/ Jarrod L. Bentley
Counsel for Petitioner, Kentucky EEC

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the word limitation of this Court's August 18, 2023 Order (Case Nos. 23-3216/3225, RE 44-2 (6th Cir. Aug. 18, 2023) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,259 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated: January 8, 2024

 /s/ Jarrod L. Bentley
Counsel for Petitioner, Kentucky EEC